IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

NATHAN ROBERT GONINAN,

              Plaintiff,                        6:12-cv-02301-PK

v.                                              FINDINGS &
                                                RECOMMENDATION

C/O SMITH, CORP. TYRON, JEFF PREMO,
GABE GITNESS, CARLA PEDILLA,
CORP. HARBAUGH, NURSE JULIE STORY,
NURSE PAM, CAPT. HOLCOMB,

              Defendants.

_____

PAPAK, Magistrate Judge:

    Plaintiff *pro se* Nathan Goninan filed this action on December 19, 2012, against

defendants alleging violations of his Eighth Amendment rights.  Goninan seeks injunctive relief,

Page 1 - FINDINGS AND RECOMMENDATION

a declaratory judgment stating that defendants violated his constitutional rights, and money damages. This court has federal-question jurisdiction over Goninan's claims pursuant to 28 U.S.C. § 1331.

Now before the court is defendants' motion for summary judgment (#48). Defendants move on the grounds that plaintiff has not exhausted his administrative remedies in the underlying dispute. I have considered the motion and all of the briefings, papers and pleadings on file. For the reasons set forth below, defendants' motion should be granted and Goninan's claims should be dismissed.

## LEGAL STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not proper if material factual issues exist for trial. *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). The substantive law governing a claim or defense determines whether a fact is material. *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998). In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g.*, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554–55 (1990).

## FACTUAL BACKGROUND

I.     **Facts Underlying the Parties' Dispute**[1]

Goninan is an incarcerated person and has been in the custody of the Oregon Department of Corrections ("ODOC") since December 27, 2007.  Goninan is currently housed at Oregon State Penitentiary ("OSP").  Defendants are various members of ODOC correctional, medical, and administrative staff.

On July 15, 2012, ODOC correctional staff intervened in an altercation between Goninan and another inmate and ended the altercation by pepper spraying and restraining Goninan and the other individual involved.  Complaint, #3, 2.  According to Goninan, after being secured in hand and leg restraints, defendant correctional officer Smith deliberately caused Goninan to fall and break his teeth.  *Id.*  Goninan states that defendant Corporal Tyron, who was present, did nothing to prevent the alleged beating by Smith.  *Id.* at 4.

After the incident, two hours elapsed before Goninan was allowed by correctional and administrative staff to see Nurse Young, at which time he was attended to for only twenty seconds before being declared "alright."  *Id.*

Goninan was then moved to a prison cell with a persistent sewage leak.  *Id.* at 5.  Goninan states that complaints made to prison staff, including three named defendants, during that time resulted in no immediate effort to sanitize the conditions of his cell.  *Id.* at 4–5.  OSP staff repaired the leak ten days later.  *Id.*

Goninan's first grievance filed during the relevant period, and regarding the matters at

---

[1] Except where otherwise indicated, the following recitation constitutes my construal of the evidentiary record in light of the legal standard governing motions for summary judgment under Federal Civil Procedure Rule 56.

issue in this case, was submitted on July 23, 2012. In this grievance, Goninan alleged excessive force by Smith in the above mentioned incident. The grievance was accepted and Smith responded on August 10, 2012. Decl. of Brent Eriksen, #49, 4, Att. 5. In his response, Smith said that the excessive force alleged in Goninan's grievance "did not happen and the entire thing is fictitious." *Id.* The response was sent to Goninan on August 17, 2012. *Id.*, Att. 6. Importantly, Goninan was transferred to disciplinary segregation on August 21, 2012 until September 3, 2012. Pl.'s Response, #61, 2. After leaving disciplinary segregation, Goninan appealed the response on September 10, 2012, and his appeal was denied pursuant to ORS 291-109-0170 because it was untimely filed as 24 days had passed, exceeding the 14-day appeal period. *Id.*, Att. 8. Goninan filed a second appeal on September 24, 2012, but it was denied on the same grounds. *Id.*, Att. 9.

On September 10, 2012, Goninan filed an unrelated grievance complaining about his lock-down status. The grievance was denied on September 17, 2012, and Goninan did not appeal the denial. Decl. of Brent Eriksen, #49, 4, Att. 10.

Also on September 10, 2012, Goninan filed a grievance complaining that he was entitled to an investigation by the Inspector General regarding the July 15, 2012, incident. *Id.*, Att. 11. On September 18, 2012, a supervisor with the Inspector General's Office provided a response. Goninan did not appeal that response. *Id.*, Att. 12.

On November 15, 2012, Goninan filed an unrelated grievance complaining that he was handcuffed for an excessive period of time on October 18, 2012. *Id.*, Att. 13. A response was provided on December 20, 2012. *Id.*, Att. 14. Goninan filed a grievance appeal on January 8, 2013. *Id.*, Att. 15.

Page 4 - FINDINGS AND RECOMMENDATION

Also on November 15, 2012, Goninan filed an unrelated grievance complaining that he

was yelled at for swallowing metal sprinkler parts. *Id.*, Att. 16. A response was provided on

December 20, 2012. *Id.*, Att. 17. Goninan filed an untimely grievance appeal on January 8,

2013, which was denied. *Id.*, Att. 18–19.

On November 20, Goninan filed four separate unrelated grievances. *Id.*, Att. 20, 22, 24,

26. These grievances related to excessive noise, shower cleanliness, general issues with the

grievance system, and Goninan's housing placement. Goninan received responses for the first

three grievances but did not appeal any of them. Decl. of Brent Eriksen, #49, 4, Att. 21, 23, 25.

The fourth grievance, regarding housing placement, was denied because it was not signed. *Id.*,

Att. 27.

Thus, the relevant grievances of record are those filed on August 10, 2012, and

September 10, 2012. Both the September and August grievances relate to the July 15, 2012,

incident but do not address Goninan's statement. There are no valid grievances of record related

to Goninan's complaints of medical mistreatment or sewage leaks in his holding areas.

## II.    Grievance Procedures at ODOC

Goninan has at all material times been housed at OSP. Goninan had available to him a

three-level grievance procedure consistent with the regulations set forth in Chapter 292, Division

109 of the Oregon Administrative Rules.

Pursuant to the OSP grievance procedures and applicable Oregon Administrative Rules,

"[i]f an inmate is unable to resolve an issue through informal communications, [the] inmate may

seek resolution of the issue by submitting a written grievance using the department's approved

inmate grievance form (CD 117)." OAR-291-109-0140(1)(a). Any such grievance "must

include a complete description of the incident, action, or application of the rule being grieved, including date and approximate time," and should be accompanied by any referenced documents. OAR-291-109-0140(l)(b). Matters, actions, and incidents that an inmate may properly grieve are the "misapplication of any administrative directive or operational procedure," the "lack of an administrative directive or operational procedure," any "unprofessional behavior or action which may be directed toward an inmate by an employee or volunteer of [ODOC] or the Oregon Corrections Enterprises," any "oversight or error affecting an inmate," any "program failure as defined in . . . OAR-291-077-0020," except where such failure was caused by the inmate's misconduct, or the "loss or destruction of [the inmate's] property . . . ." OAR-291-109-0140(2). "An inmate grievance may request review of just one matter, action, or incident per inmate grievance form." OAR-291-109-0140(l)(d). Similarly, inmates are not permitted to grieve the actions of more than one ODOC employee through a single grievance form, but rather must file one grievance form per ODOC employee whose actions are the subject of the inmate's challenge. *See* OAR-291-109-0140(3)(e). In addition, inmates are not permitted to grieve any claim or issue "that the inmate is pursuing in pending litigation in state or federal courts." OAR-291-109-0140(3)(f). A grievance will not be processed unless it is received by the applicable grievance coordinator on form CD 117 "within 30 calendar days of the date of the incident giving rise to the grievance." OAR-291-109-0150(2).

Upon receipt of an inmate grievance, a grievance coordinator is required to "assign the grievance a number and record its receipt in an inmate grievance log" and to "send a grievance receipt to the inmate." OAR-291-109-0160(1) and (l)(a). The grievance coordinator is then required to coordinate with the ODOC employee best suited to respond to the grievance, and to

send the inmate's grievance to that person "for reply." OAR-291-109-0160(1)(b). The response

must "be returned to the grievance coordinator for processing within 21 calendar days."

OAR-291-109-0160(1)(c). Following such processing, the grievance coordinator is required to

send the inmate copies of both the grievance and the response, and to retain copies for the

grievance coordinator's files, all within "45 days from the date the grievance was received" by the

grievance coordinator, "unless further investigation is necessary." OAR-291-109-0160(2). In

the event the grievance coordinator fails to complete processing of the grievance within 45 days

of its receipt, "the grievance coordinator will make an effort to notify the inmate of the status of

the grievance." *Id.* "If the inmate does not receive a response within the allotted time frame,

he/she may contact the grievance coordinator." *Id.*

"If at any time the grievance coordinator determines the inmate has pursued his/her

grievance through state or federal courts, the grievance process will cease and the grievance will

be returned to the inmate." OAR-291-109-0160(4). "A grievance that has been returned to [an]

inmate by the grievance coordinator for procedural reasons cannot be appealed."

OAR-291-109-0160(5).

An inmate may appeal the institutional response to the inmate's grievance by and through

"the grievance appeal form (CD 117c)." OAR-291-109-0l 70(l)(a). Any such appeal "must be

submitted to the grievance coordinator together with the original grievance, attachments, and

staff response(s)." *Id.* The scope of the originally submitted grievance cannot be expanded on

appeal, and the inmate is not permitted to add new information regarding the grieved incident on

appeal, except where such information was unavailable to the inmate at the time the original

grievance was filed. *See id.* Any such appeal must be received by the grievance coordinator

Page 7 - FINDINGS AND RECOMMENDATION

"within 14 days from the date that the grievance response was sent to the inmate from the grievance coordinator." OAR-291-109-0170(l)(b). The grievance coordinator is required to send the appeal to the "functional unit manager," who is required to respond to the appeal "within 30 calendar days." *Id.* The grievance coordinator is then required to send the functional unit manager's appeal response to the inmate. See OAR-291-109-0170(2)(c).

In the event an inmate wishes to appeal the functional unit manager's decision regarding a grievance appeal, the inmate may do so "using the grievance appeal form (CD 117c )." OAR-291-109-0170(2)(a). Any such appeal "must be submitted to the grievance coordinator together with the original grievance, attachments, staff responses, and documentation related to the first grievance appeal." *Id.* The grievance coordinator must receive any such appeal "within 14 calendar days from the date that the first grievance appeal response was sent to the inmate from the grievance coordinator." OAR-291-109-0170(2)( c ). As with the first appeal, appeal of the functional unit manager's response cannot expand the scope of the original grievance, and cannot adduce new information regarding the originally grieved incident, except where such information was unavailable to the inmate at the time the original grievance or first appeal was filed. *See* OAR-291-109-0170(2)(a). The grievance coordinator is required to forward any such appeal to "the Assistant Director having authority to review and resolve the issue." *Id.* The Assistant Director with such authority is required to respond to any such appeal from a functional unit manager's grievance appeal response "within 30 calendar days." OAR-291-109,0l 70(2)(c). "The Assistant Director's . . . decision on [a] grievance appeal is FINAL," and not subject to administrative review. OAR-291-109-070(2)(d).

Page 8 - FINDINGS AND RECOMMENDATION

**LEGAL STANDARD**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). The substantive law governing a claim or defense determines whether a fact is material. *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998). In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554–55 (1990).

**DISCUSSION**

Goninan brings several Eighth Amendment claims under Section 1983, which are premised on (1) the July 15, 2012, incident during which Goninan alleges that he was subject to excessive force by correctional staff, (2) claims that OSP personnel did not provide him adequate medical attention in response to injuries arising from that incident, and (3) claims that, following said incident, Goninan was placed in a cell that had a sewage leak resulting in unsanitary living conditions. For the purposes of the analysis that follows, I construe these claims in their separate categories and treat each as a separately pled Eighth Amendment claim.

## I.    Prison Litigation Reform Act

Under the Prison Litigation Reform Act ("PLRA"), incarcerated plaintiffs are required to

exhaust all administrative remedies available to them within the institutions in which they are

housed before bringing any federal action in connection with prison conditions, including actions

brought under 42 U.S.C. § 1983:

> No action shall be brought with respect to prison conditions under section 1983 of
> this title, or any other Federal law, by a prisoner confined in any jail, prison, or other
> correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  For purposes of the PLRA, actions brought with respect to "prison

conditions" include all actions brought to challenge isolated episodes of unconstitutional or

otherwise unlawful misconduct of any kind as well as prisoner petitions challenging conditions

of confinement.  *See Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Under the PLRA, the courts

lack discretion to consider claims challenging prison conditions, including claims for money

damages, except where such claims are filed following complete exhaustion of available

administrative remedies, without regard to the nature of the administrative remedies available

under such administrative grievance procedures.  *See id.* at 524, *citing Booth v. Churner*, 532

U.S. 731, 739, 740 n. 5, 741 (2001).

Inmates are not required to plead or demonstrate exhaustion before bringing prison-

condition lawsuits.  *Jones v. Bock*, 549 U.S. 199, 216 (2007).  To the contrary, an incarcerated

plaintiff's failure to satisfy the PLRA exhaustion requirement is an affirmative defense that is the

burden of the defendant in a prison-conditions lawsuit to raise and prove.  *See id.*  Following the

Ninth Circuit's *en banc* decision in *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014), the courts of

the Ninth Circuit treat challenges to a prisoner's exhaustion of administrative remedies as

Page 10 - FINDINGS AND RECOMMENDATION

motions for summary judgment if premised on proffered evidence, and as motions to dismiss for failure to state a claim if premised on the incarcerated plaintiff's pleading alone.  *See Albino*, 747 F.3d at 1166.  Here, defendants have properly brought an evidence-based challenge to Goninan's exhaustion of administrative remedies as a motion for summary judgment.

"If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56."  *Id.*  However, "[i]f material facts are disputed, summary judgment should be denied, and [following such denial] the district judge rather than a jury should determine the facts."  *Id.*  The *Albino* court specified that the court should act as the finder of fact in connection with an exhaustion challenge "in a preliminary proceeding," *id.* at 1168, "if feasible, before reaching the merits of a prisoner's claim," *id.* at 1170.  Such preliminary proceeding is to be conducted "in the same manner a judge rather than jury decides disputed factual questions relevant to jurisdiction and venue," *id.*, which is to say via a plenary evidentiary hearing to be conducted in a manner within the discretion of the court, *see, e.g., Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285, 1285 n. 2 (9th Cir. 1977).

For purposes of the PLRA, "complete exhaustion" of available administrative remedies requires that an inmate "complete the administrative review process in accordance with [all] applicable procedural rules, including deadlines. . . ." *Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009), *quoting Woodford v. Ngo*, 548 U.S. 81, 88 (2006).  Indeed, as the Supreme Court established in *Woodford*, "proper exhaustion of administrative remedies . . . 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 90 (emphasis original), *quoting Pozo v. McCaughtry*, 286

F.3d 1022, 1024 (7th Cir. 2002).  The *Woodford* court reasoned that to hold otherwise would permit prisoners to render the PLRA exhaustion requirement "wholly ineffective" by defaulting in the performance of administrative requirements and then claiming exhaustion by virtue of such procedural default. *Id.* at 95.  Under *Woodford*, only proper exhaustion of administrative requirements, including compliance with deadlines and performance of all procedural requisites, is sufficient to satisfy the requirements of the PLRA. *See id.* at 90–91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . .").

### 1.    Claims Alleging Excessive Force and Supervisor Liability

Here, as noted above, on or around July 23, 2012, Goninan timely filed a grievance regarding only the July 15, 2012, incident, to which he received a response on August 17, 2012. Also as noted above, Goninan appealed the response but did so in an untimely manner, filing on September 10, 2012, rather than the deadline of August 31, 2012.  Because the appeal was untimely filed, this court lacks discretion to consider the merits of any claim arising out of the grievance of July 23, 2012. *See Woodford* 548 U.S. at 90 (holding the untimely filing of a grievance constitutes a failure to exhaust under the PLRA, and explaining doubts that PLRA allows "a prisoner wishing to bypass available administrative remedies [to] simply file a late grievance," and be therefore enabled to "proceed directly to federal court").

Goninan does not dispute that he untimely appealed to the second level of review. Instead, he asserts that he could not comply with the timeline attached to the required succession of grievances because he was moved to disciplinary segregation and was unable to receive his mail.  Pl.'s Response, #61, 2.  Thus, Goninan contends he was unable to avail himself of the grievance procedures due to obstruction by ODOC personnel. *Id.*

Under the PLRA, as amended, prisoners must exhaust "such administrative remedies as are available" prior to filing suit in federal court challenging prison conditions. 42 U.S.C. § 1997(e)(a). "If a prisoner had full opportunity and ability to file a grievance timely, but failed to do so, he has not properly exhausted his administrative remedies." *Marella v. Terhune*, 568 F.3d 1024, 1028 (9th Cir. 2009) (*citing Woodford*, 548 U.S. at 88). However, a prisoner's failure to exhaust may be excused if he can demonstrate that the grievance process is unavailable to him because: (1) administrative procedures are unavailable (for example, inability to obtain proper forms); (2) prison officials obstructed his attempts to exhaust; or (3) prison officials failed to follow grievance processing protocol. *Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010). Further, an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *Id.* To be available, "a remedy must be capable of use for the accomplishment of its purpose." *Id.* at 1224 (*citing Turner v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008)).

As explained above, ODOC's grievance procedures maintain that any appeal to a grievance response must be received by the grievance coordinator "within 14 days from the date that the grievance response was sent to the inmate from the grievance coordinator." OAR-291-109-0170(l)(b) (emphases added). The record indicates that Goninan was transferred to the disciplinary segregation unit on August 21, 2012, while ODOC responded to Goninan's grievance on August 17, 2012. Decl. of Brent Eriksen, #49, 4, Att. 4. Goninan provides conflicting accounts of the circumstances leading to his alleged inability to respond. Pl.'s Response, #61, 2, 30. His September 18, 2012, grievance, filed on similar grounds as the prior one, explains his lack of timely response. Goninan states that (1) he did not receive the response

in a timely fashion because he was moved disciplinary segregation and was subject to unreliable mail delivery, (2) he could not appeal ODOC's grievance response while he was in disciplinary segregation due to the unavailability of others, presumably other inmates, to assist him in writing his appeal, and (3) he did not respond because he did not have declarations made by his fellow inmates due to his move. *Id.* These assertions do not allege that Goninan was devoid of property or unable to receive mail, and Goninan recognizes that inmates are allowed limited property while in the disciplinary segregation unit. Decl. of Brent Eriksen, #49, Att. 10, 1. Further, the record does not reflect that ODOC withholds mail from the disciplinary segregation unit. Finally, Goninan has no right to receive grievance assistance from others, and the lack of available assistance in the disciplinary segregation unit does not affect this analysis.

The dispositive facts of record are: (1) ODOC's grievance procedures require inmates to timely file appeals within fourteen days from the day a grievance response *is sent to the inmate*, (2) Goninan did not appeal ODOC's August 17, 2012, response until September 24, 2012, after the timely filing deadline had run, and (3) Goninan does not establish that he was obstructed from submitting his appeal, he merely argues several conflicting inconveniences. Goninan's arguments are not enough. *See Villarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002), citing *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996) ("uncorroborated and self-serving" testimony, without more, does not create a genuine issue of material fact). Accordingly, I find no question of material fact as to whether Goninan exhausted the grievance procedures available to him in connection with his excessive force claims made in connection with the July 15, 2012, incident. Thus, the PLRA bars Goninan's excessive force claims.

2.    **Inadequate Medical Care Claim**

Regarding Goninan's claim of inadequate medical care, the record reflects, and defendants contend, that no grievances were submitted during the relevant time period or otherwise. Goninan had administrative remedies available to him regarding his complaints about improper medical care, yet the record indicates he did not fully exhaust the administrative process, as he never filed a grievance regarding his medical complaints. *See Booth v. Churner*, 532 U.S. 731, 735 (2001); *Brown v. Valoff*, 422 F.3d 926, 936–37 (9th Cir. 2005).

While Goninan did not initially maintain that he grieved his alleged inadequate medical attention using ODOC's grievance procedures, he has since provided as attachments to his response to defendants' motion for summary judgment one completed grievance form and two completed grievance appeal forms purportedly submitted and unanswered by ODOC's grievance personnel. Pl.'s Response, #61, 4, Ex. 5, 1–3. Those documents directly address Goninan's claims of inadequate healthcare. In response, defendants point to the fact that these forms were not assigned a grievance number, were never submitted to ODOC personnel, and allege that they were simply created for the purposes of this litigation. Def.'s Reply, 66, 3. In support of their position, defendants refer to Goninan's grievance history to show that "ODOC routinely responded to plaintiff's grievances. . . ." *Id.* Defendants contention is correct insofar as the newly supplied grievance forms in question, beyond their similar appearance, condition, and language, do not contain appeals numbers, proof of receipt, proof of denial or acceptance, or other insignia that is ubiquitous in all other properly submitted grievance forms provided by both Goninan and defendants throughout their filings. *Compare* Pl.'s Response, #61, Ex. 5, 1–3, *with* Pl.'s Response, #61, Ex. 3–4, *and* Decl. of Brent Eriksen, #49, Att. 4, 7, 8, 10, 11, 13, 15, 16, 18,

20, 22, 24, 26.  Pursuant to the standard discussed above and set forth in *Albino*, which maintains that "disputed questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue," I determine based on the myriad inconsistencies with the newly provided forms that Goninan did not pursue grievance procedures regarding his claims of inadequate medical care. *Albino*, 747 F.3d at 1170–71.  Thus, there is no genuine issue of material fact as to whether Goninan exhausted the administrative remedies available to him.

### 3.    Unsanitary Living Conditions Claim

Unlike the claims of inadequate medical care, it is undisputed that Goninan did not grieve his Eighth Amendment claims alleging unsanitary living conditions.  However, equally unlike the medical care claims, Goninan admits his failure to grieve and states that the problem was addressed and, therefore, "there was no need for a grievance."  Pl.'s Response, #61, 5.  Because the problem was remedied, Goninan argues, he "could not get anymore relief and [he] had nothing he could grieve. . . ."  *Id.*  Goninan nonetheless brings this claim alleging violation of his Eighth Amendment rights for the period of time during which the sewage leak occurred.  In short, Goninan argues that ODOC's resolution of the issue relieves him from PLRA's exhaustion requirement.  In furtherance of this contention, Goninan cites several cases that support the general notion that the exhaustion requirement may be satisfied by resolution of the matter complained of.  *See id.* (citing *Mocnik v. Williams*, 2006 WL 3538989 (W.D. Wis. Dec. 6, 2006); *Bolton v. U.S.*, 347 F. Supp. 2d 1218 (N.D. Fla. 2004); *Dixon v. Goord*, 224 F. Supp. 2d 739 (S.D.N.Y. 2002)).  While these cases do offer valid support for the 'exhaustion through resolution' principle, Goninan misapplies that principle to these circumstances.  As defendants

Page 16 - FINDINGS AND RECOMMENDATION

argue, all of the cited cases involve inmates who properly grieved their claims prior to the response and resolution of their respective issues by facility personnel.  That is to say, where, as here, the conditions were addressed, the inmate was moved to a clean cell, and no grievance was filed, administrative remedies have not been exhausted for the purposes of the PLRA.  *See* Pl.'s Response, #61, 5.  Had Goninan grieved this issue at any point, this outcome would differ.

### 4.   Summary

In consequence of the foregoing analysis, under the PLRA this court lacks discretion to consider the merits of Goninan's claims regarding excessive force, unsanitary living conditions, and improper medical care.  Defendants are entitled to summary judgment in connection with those claims, and they should be dismissed with prejudice.

### CONCLUSION

For the reasons above, defendants' motion (#48) should be granted as to all of Goninan's claims.  Summary judgment should be entered in favor of all defendants.

### SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

### NOTICE

A party's failure to timely file objections to any of these findings will be considered a

waiver of that party's right to de novo consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge.  These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

Dated this 2nd day of February, 2015.

Honorable Paul Papak
United States Magistrate Judge

Page 18 - FINDINGS AND RECOMMENDATION